# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | | |
|---|---|---|
| T.R., *a minor, by and through her mother,* PORSHA BROCK, | ) ) ) ) ) | |
| Plaintiff, | ) | 6:19-cv-01101-LSC |
| vs. | ) ) | |
| THE LAMAR COUNTY BOARD OF EDUCATION, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**Memorandum of Opinion**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Here, pleadings closed in December of 2019. (Doc. 14 at ¶¶ 1–2.) Three months later, and early enough to not delay trial, Defendants moved for partial judgment on the pleadings. (Doc. 19.) Defendants' motion is due to be GRANTED IN PART and DENIED IN PART.

I.   **Facts and Standard of Review**

At this stage, the Court accepts all facts alleged in the plaintiff's (Brock's) Complaint as true. *Douglas Asphalt Co. v. Quore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008). The court interprets close calls or unclear facts "in the light most

favorable" to Brock. *See Perez v. Wells Fargo, N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2015). Accepted as true and viewed in Brock's favor, the facts are as follows:

In August of 2017, T.R. was an eighth-grade, special-needs student at Sulligent High School. (Doc. 1 at ¶ 4.) Sulligent High School answers to the Lamar County Board of Education (LCBE). (*Id.* at ¶ 5.)

On August 28, 2017, students in T.R.'s agriculture class smelled marijuana and complained to their teacher. (*Id.* at ¶ 12.) Ms. Fowler, Sulligent's agriculture teacher, relayed those complaints to Sulligent's principal (Stamps) and vice-principal (Byars). (*Id.*)

Stamps and Byars searched the backpack of every student in T.R.'s class. (*Id.* at ¶ 13.) In T.R.'s backpack, Stamps and Byars found drug paraphernalia, marijuana, and prescription medication. (*Id.* at ¶ 14.) According to Sulligent's official policy, administrators must call law enforcement when they find students with drugs. (*Id.* at ¶ 29.)

Rather than follow school policy and alert law enforcement, Stamps and Byers ordered T.R. to the guidance counselor's office. (*Id.* at ¶ 16.) There, without law enforcement or T.R.'s mother present, Stamps told T.R. to remove her clothes, lift her breasts, and spread her legs. (*Id.* at ¶ 18.) T.R. complied. (*Id.*) This first search revealed no additional drugs or drug paraphernalia. (*Id.*) After the first strip search, the school alerted T.R.'s mother (Brock). (*Id.* at ¶ 23.) Brock drove to Sulligent and

spoke with school officials. (*Id*. at ¶ 24.) Then, once again, officials ordered T.R. to strip, lift her breasts, and spread her legs. (*Id.* at ¶ 25.) LCBE superintendent Vance Harron (Harron) was aware of both searches but never intervened. (*Id.* at ¶ 43.)

Believing both strip searches violated school policy and the United States Constitution's Fourth Amendment, Brock sued LCBE, Harron, Stamps, and guidance counselor Kathy Dean (Dean). Five counts comprise Brock's Complaint. Counts I and II—both brought under 42 U.S.C. § 1983—allege violations of federal law. Counts III, IV, and V arise under Alabama tort law. Brock sues the defendants in both their individual[1] and official capacities. (Doc. 1 at Pages 2–4.)

Defendants moved for seven judgments on the pleadings. First, they ask the Court to dismiss paragraphs 64(a) and 64(b) of Brock's Complaint. Second, defendants argue sovereign immunity bars Brock's state-law claims against LCBE. Defendants also argue sovereign immunity protects the individual defendants—Stamps, Dean, and Harron—from state-law liability *to the extent* Brock sued them in their official capacities. Fourth, Defendants say Brock cannot recover attorney's fees should she prevail on her state-law claims. Fifth, defendants argue Brock cannot recover punitive damages on her federal claims against LCBE and her federal official capacity claims against Harron, Stamps, and Dean. Sixth, defendants argue

---

[1] LCBE is the one exception. LCBE has no individual capacity.

Count I fails to state a claim against Harron. Finally, defendants seek dismissal of Brock's failure-to-train claim (Count II).

Courts apply the same scrutiny to motions for judgment on the pleadings (under 12(c)) and motions to dismiss (under 12(b)(6)). *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). For both, we ask if the plaintiff pled sufficient facts for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, is the claim "plausible on its face?" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If yes, the claim meets Rule 8's standard and survives the motion. *See* FED. R. CIV. P. 8(a)(2).

## II. Analysis

Defendants make seven arguments. Brock concedes five. Below, the Court goes argument-by-argument. The Court accepts each concession and analyzes the two disputed points.

### 1

Defendants moved to dismiss paragraphs 64(a) and 64(b) of Brock's prayer for relief. (Doc. 20 at Pages 10–11.) Paragraph 64(a) asks for a declaratory judgment. (Doc. 1 at ¶ 64). Paragraph 64(b) seeks an injunction. (*Id.*) Brock concedes these two paragraphs should be dismissed. The Court accepts her concession.

2

Brock sued LCBE for the tort of outrage. (Doc. 1 at Page 13.) Defendants, citing Alabama's Constitution, say LCBE is immune from outrage liability. *See* ALA. CONST. of 1901, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."); *Ex Parte Hale Cnty. Bd. of Educ.*, 14 So.3d 844, 848 (Ala. 2009) (county boards of education are local agencies of the state and therefore are "clothed in constitutional immunity"). Brock concedes. (Doc. 21 at 1.) The Court accepts her concession and dismisses Brock's outrage claim against LCBE.

3

Brock sued Stamps and Dean for assault, invasion of privacy, and outrage. She sued Harron for outrage. Assault, invasion of privacy, and outrage are all state-law claims. Defendants argue Stamps, Dean, and Harron deserve "absolute immunity" on these state claims to the extent Brock sued them in their official capacities. (*Id.*) Once again, Brock concedes. (Doc. 21 at Page 2.)

The Court accepts Brock's concession. *See Alexander v. Hatfield*, 652 So.2d 1142, 1144 (Ala. 1994) (explaining that "state officers and employees, in their official capacities . . . are absolutely immune from suit when the action is, in effect, one against the State"). The Court dismisses Brock's official capacity claims against Stamps and Dean for assault, invasion of privacy, and outrage. The Court dismisses Brock's outrage claim against Harron in his official capacity.

**4**

Brock's Complaint demands attorney's fees and costs. (Doc. 1 at 14.) Defendants moved to dismiss Brock's demand for fees and costs *to the extent* it rests on Brock's state-law claims. (Doc. 20 at Page 11.) Brock concedes. (Doc. 21 at Page 5) (admitting her "demand for attorney's fees in Counts III, IV, and V [are] is improper"). The Court accepts Brock's concession and dismisses her demand for attorney's fees and costs to the extent it relies on Counts III, IV, and V.

**5**

According to defendants, the Court should dismiss Brock's claim for punitive damages so far as it rests (a) on Brock's federal causes of action (b) against LCBE and against Stamps, Dean, and Harran in their official capacities. (Doc. 20 at Page 7.) Brock concedes. (Doc. 21 at Page 2.) The Court accepts Brock's concession and dismisses any demand for punitive damages based on Brock's federal claims against LCBE and her federal official capacity claims against Stamps, Dean, and Harran.

**6**

Count II is a § 1983 failure-to-train claim against LCBE and Harron. Defendants say Brock alleged insufficient facts for a plausible claim. The Court disagrees.

Title 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state . . . subjects, or causes to be subjected,

> any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Local government entities (like Lamar County Board of Education) face liability when *they* "subject" someone to "the deprivation of" federal rights. *See Monell v. N.Y. Dept. of Social Soc. Servs.*, 436 U.S. 658, 692 (1978). However, local governments are not vicariously liable for deprivations caused by their employees. *See Pembaur v. Cincinatti*, 475 U.S. 469, 479 (1986).

To distinguish municipal liability (actionable) from vicarious liability (not actionable), courts ask if a local government's "official policy" caused the plaintiff's deprivation. *Monell*, 436 U.S. at 698. If an official policy unlawfully deprives someone of his or her rights, then the government, not just the government's employees, violate the law. *See Gold v. Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

Sometimes, a local government's failure to train its employees creates an official policy and an actionable claim. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). For a failure-to-train claim, Brock must allege enough facts to make three elements plausible. *Gold*, 151 F.3d at 1350. First, that LCBE failed to train its employees. *Id*. Second, that LCBE's failure to train rose to the level of an official

government policy. *Id.* Third, that LCBE's failure to train caused T.R.'s deprivation. *Id.*

Brock's claim satisfies element one. Under element one, she must allege facts suggesting LCBE and Harron inadequately trained Stamps and Dean. Brock alleges: "Harron and LCBE failed to properly train and/or supervise Defendant . . . with respect to Lamar County's school board policy concerning student searches and drugs." (Doc. 1 at ¶ 48.). Furthermore, Brock says Sulligent officials deviated from school policy. (Doc. 1 at ¶ 29.) Stamps and Dean found drugs but never alerted law enforcement. (*Id.*)

To prove an official policy of inept training (element two), Brock must show LCBE acted with "deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). For that, a pattern of similar violations by the local government's untrained employees is "ordinarily necessary." *Id*. But, in "a narrow range of circumstances," plaintiffs may show deliberate indifference without alleging a pattern of unconstitutional conduct. *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997). For instance, police officers commonly use deadly force. Therefore, failing to train police about proper force "could properly be characterized as deliberate indifference" even if the local police department has no history of misconduct. *Canton*, 489 U.S. at 391 fn. 10. The Eleventh Circuit frames this question as whether defendants "face clear constitutional duties in recurrent situations." *Young v. City of*

*Augusta*, 59 F.3d 1160, 1173 (11th Cir. 1995). If someone (like a police officer) "recurrently" has constitutional duties, then failing to train him or her may show a government's deliberate indifference—even without a pattern of similar conduct. *Id.*

Although close, Brock plausibly alleges a pattern of unconstitutional searches at LCBE. She says LCBE "had a custom of conducting unlawful searches." (Doc. 1 at ¶ 50.) The Court ignores that conclusory statement. *See Hall v. Smith*, 170 Fed. App'x. 105, 108 (11th Cir. 2006) ("Because [the plaintiff] alleged no factual support for his conclusory statement that the City had a policy or custom of grossly inadequate . . . training, the district court did not err in dismissing [the plaintiff's] claims."). Legal conclusions aside, Brock's Complaint alleges two facts supporting a pattern. First:

> Harron was aware of the circumstances T.R. was enduring while Stamps and Dean were conducting the strip searches . . . They did not take any action to prevent T.R. from having her rights violated multiple times by Stamps and Dean. (Doc. 1 at ¶ 47.)

In other words, Stamps and Dean twice searched T.R. Perhaps both searches were part of the same incident. If so, this allegation *alone* does not suggest a pattern. *See Craig v. Floyd Cty. Ga.,* 643 F.3d 1306, 1309 (11th Cir. 2011) (a single unconstitutional act "is not sufficient to establish a custom, policy, or practice of deliberate indifference"). But an additional fact aids Brock's claim: LCBE has a policy in place for *this* situation. Through discovery, Brock could show LCBE created that policy in response to a history or pattern of unconstitutional searches.

Even with no pattern, Brock could plausibly show Sulligent employees face "recurrent situations" like T.R.'s. After all, Sulligent has a policy in place. Having a policy may suggest T.R. is not the first student Sulligent administrators found with drugs. Perhaps Sulligent recurrently finds students with drugs and recurrently searches those students. If so, then failing to train administrators could show deliberate indifference. Brock's allegations satisfy element two.

Assuming LCBE and Harron inadequately trained Dean and Stamps, that failure plausibly caused T.R.'s deprivation. If Dean and Stamps followed policy and called law enforcement, Dean and Stamps would (perhaps) have not searched T.R. A trained law enforcement officer may have handled the search differently.

The Court finds Brock's failure-to-train claim is plausible. The Court denies defendants' motion for judgment on the pleadings as to Count II.

## 7

In Count I, Brock sues Harron, Stamps, and Dean for violating T.R's Fourth Amendment rights. (Doc. 1 at Pages 8–9.) Defendant moved to dismiss Harron. (Doc. 20 at 9–10.) According to Defendants, Brock did not allege sufficient facts to hold Harron—a supervisor who did not search T.R.—liable. (*Id.*)

A supervisor faces § 1983 liability when he "directly participates in the unconstitutional conduct" or when "a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Keith v. Dekalb Cty.*

*Ga.*, 749 F.3d 1034, 1047–48 (11th Cir. 2014). If the supervisor directed his subordinates to act unlawfully then a "causal connection" exists, and he may face liability for the unlawful conduct he directed. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

Assuming Stamps and Dean acted unlawfully, a causal connection plausibly exists between those actions and Harron. Harron was aware of T.R.'s first strip search. (Doc. 1 at ¶ 43.) Rather than intervene, he took no action and allowed a second search. (*Id.*) Those facts create questions. Did Stamps and Dean contact Harron between searches? Did Harron direct the second search? Or the first search? Did Stamps and Dean seek Harron's permission? These questions deserve discovery and time for development. Therefore, the Court denies Defendants' motion to dismiss Harron from Count I.

### III.  **Conclusion**

The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** and **ORDERED** on September 18, 2020.

_____
L. Scott Coogler
United States District Judge

203323